on our docket this morning. May it please the Court, Renee Hicks for the Twelve Fath Appellants. We're here today and we appreciate the Court taking the time to hear this emergency matter. On a request by us for an emergency injunction pending our appeal from the District Court's denial of our request for a preliminary injunction, we are directed to request for the preliminary injunction at one specific set of activities that involves a new highway that would be constructed called SH-45 SW Phase 1. It's about ten miles south of here and runs for somewhere between three and a half and four miles. It would run. It's undeveloped land, largely untouched land. It is also the area that would be cleared, pre-cleared, it's from the Voting Rights Act, that would be cleared that we're trying to stop is the habitat for an enlisted endangered species, the golden-cheeked warbler. That is about, I can't remember if it's 54 or 58 acres of trees and related habitat for the golden-cheeked warbler. That's what we're asking for an emergency injunction to stop. What is the record evidence suggesting that there are golden-cheeked warblers in the SH-45 project right-of-way? There are, it's in the record. Right. There are reports from the city of Austin which have gone out and heard golden-cheeked warblers, the mating call of golden-cheeked warblers, the male golden-cheeked warblers there. Fairly recently, I don't remember if it's, it was before they would have left for the winter to head south, not long before that. Because I thought the record evidence was to the contrary, that they're not actually in the area. Oh, you mean right now, right? No, I don't mean right now because I know it's not the time of the year and that's part of the reason they want to do the project now. I'm asking, was there evidence that this was their habitat in this area where the right-of-way is on this section of the project? Yes, Your Honor. And you don't know exactly where that is in the record? It's okay if you don't. I can't pinpoint it, Your Honor. Okay. But it is in the record that this is habitat. We also, and that the birds were there. It's not just the habitat, that the birds were there too. Let me focus. I want to make sure I understand exactly what argument you're pressing in this emergency motion. In the district court, he considered three arguments, segmentation, cumulative impact, and then this issue of whether one of the projects, the 455 Southwest, was a state or federal project. Are you just here arguing, challenging the segmentation analysis he did? We're actually challenging his determination, the district court's determination, that the segmentation analysis under 711.111F, I think, 111F of the Federal Highway Administration Regulation, that that supplanted CEQ regulations that are binding. That is, the court effectively said that the agencies did not have to follow the CEQ regulations, in particular, 1502.4A and 1508.25A2. You're saying he should have considered the CEQ when doing the segmentation analysis? I'm saying that under the law, the agencies had to consider that. They didn't. They don't argue otherwise. And the district court said they don't have to consider it because, under his analysis, the FHWA regs supplanted those regs and they weren't applicable here. But it seems to me this whole segmentation question is, I mean, we have to follow the law, but it's all sort of beside the point at the end of the day because, as the district court found, you do follow the CEQ regulations in determining cumulative impacts, and they require you to look at reasonably foreseeable future impacts. So why aren't you focusing on that? Because it doesn't seem to me that they did actually, whether it was improperly segmented or not, they did not actually consider the cumulative effect of all of this. That is our argument, Your Honor. This idea of segmentation, segmentation was one of our arguments, but what we're saying is they had to consider the cumulative actions, these three sets of actions, the environmental impact of them under 1508.25A2, which speaks of cumulative actions and having to look at the environmental impacts of those in advance. That is our argument. We aren't arguing. Everybody falls into nepotism. But the district court agreed the CEQ does require that on cumulative effects, but I don't see you as addressing that, which would need you to dive into what that actual technical memorandum says. I don't see any of that in your brief. The technical memorandum, well, we focus on the fact that they didn't do a cumulative actions analysis under 1508.25A. Your Honor mentioned the technical memorandum. That is in the record. I'm going to pick it up just a second if I may. He only addressed that under the cumulative impacts analysis done in the intersections project, finding of no significant impact. If you look at that, if you read it, there is no cumulative impacts analysis that addresses in any way SH-45 Southwest or the express lanes. There is not a single mention of it. Everything in that analysis is focused only on intersections and some things connected directly to intersections, like spur development in the area. But that is devoid. I mean, it doesn't even mention those two projects. So that is not a substitute for following 1508.25A.2 in particular, which talks about cumulative actions. And they didn't look in the intersection project. There is no look, much less a glancing look, much less a hard look, at the cumulative actions of these three projects, which are all going on at essentially the same time. They all started. The analysis of all of them started in the spring and early summer of 2013, one in April, one in May, and one in June. They already had separated them out and decided not to address them as the cumulative actions and the environmental impact of those cumulative actions. They decided that early on, and they never came back together and put them together. But these three actions are all being looked at at the same time, evaluated at the same time, planned at the same time, and they're going to be constructed at essentially the same time. And that is exactly what the cumulative actions requirement of 1508.25A.2 says they have to do. The issue is, here is the problem. They looked at, there is an acknowledgment in the record that the agencies considered these three pieces to be of one piece. And that can be found, it's best said in the traffic impact analysis. In the traffic impact analysis, they looked at all three pieces. And I just want to read, this is not in the record excerpts, but it's in the exhibits in the trial. As your Honor understands, we were going pretty fast here. But in the exhibits in the trial, it's in our exhibit one at page 24 and 25. They say, in response to public comments in the intersections administrative record, the agency says the 2035 traffic assumes that all projects listed in the plan are built, including MOPAC intersections, MOPAC South, SH45 Southwest, and other improvements. And they say, in other pieces, they say they looked at the traffic impacts as one piece. They considered all three of them together. Then the next page, page 25 of that exhibit one to our application for preliminary injunction, the next page, they say, they take the other tack with the environment. They say, in accordance with TxDOT's policy, this project was not analyzed in light of other past, present, and reasonably foreseeable future actions such as SH45 Southwest and MOPAC South. So they say they didn't consider those impacts. Now, in our prior cases involving highway projects, Hardin Creek, O'Reilly, we've applied a four-part test based on the FHWA regulations. Are you saying that you should do two inquiries? You have to apply the CEQ and the FHWA regs in determining segregation? Yes, because they aren't the same thing. Well, what case from our circuit or another one has applied this .25A regulation on a highway case? I can't speak directly to a highway case, but I don't think it makes a difference. Here's where I point to, Your Honor. There are, I think, four cases I can talk about if they come to mind quickly. Save Martin Creek Association in 1992, the Fifth Circuit case, said it looked at the four-piece analysis for segmentation. Then it turned around in that same decision and distinguished other cases from the situation in front of it then, when it found not improper segmentation. And it turned around and it said, unlike here, those cases, which required a broader analysis, those cases involved a continuous course of action, which is not present here. If the segmentation rules supplanted the requirements for cumulative actions analysis, the court would not even have needed to address that. Second, in Fridtjofsen v. Alexander, which we cited at the district court, but in our rush did not cite here, a Fifth Circuit case from 1985. The court, at page 1242, the court said this. It distinguished between connected actions, which is a part of 1508.25A1. It distinguished connected actions from cumulative actions. And in connected actions, again, this is page 1242, in connected actions it says, connected actions are defined in a manner consistent with the criteria recognized in the independent utility cases. Those are the segmentation cases. Then it said, cumulative actions, on the other hand, are defined in a manner consistent with CLEPE, which is a 1976 U.S. Supreme Court case, from which the CEQ regs 1508.2582 came. And so the Fifth Circuit itself has said there is a distinction here and that the connected actions aspect can be subsumed by the analysis in the segmentation rules, but not the cumulative actions aspect. And if you think about what happened in the ruling below, you can see why this is so, why they each have to exist together, not one trumping the other. That is, in the analysis for the cumulative actions issue, after the district court decided segmentation rules were, it was okay to segment this way, the court said that, look, the intersections project by itself has independent utility. We have questions about that, but put that aside for a second. The court did not look at any connection between SH-45, southwest, and the express lanes and intersections. It looked at no connection there. So if the segmentation rules trump, as the district court effectively held, 1508.2582, you would never have a cumulative actions analysis because you narrow in. That's the problem with it. In the case that we cited, the Riverkeeper case out of the D.C. circuit, fairly recent case, I can't remember if it was 2015 or 2016. In the Riverkeeper case, the other side I noticed in a brief somewhere said, well, that case which said 1508.25A has to be addressed on its own. The other side said, well, that wasn't a segmentation case. But the court specifically says, we quoted it, it's at page 1315 of the Riverkeeper's decision, they start off saying, instead, FERC, which was the agency there, relies on the four factors we announced in taxpayers' case to argue that it did not impermissibly segment its NEPA analysis. So they argued segmentation sufficed there, the segmentation analysis. What do you do about the part of that opinion that says it distinguishes the highway cases? It says we then quoted the agency-specific regulations that govern in the context of a federal highway project. Then they do rely on the regulation you're citing, but they say, here, that means we have to apply that regulation, distinguishing it from a highway case. Well, it just seems your discussion has already revealed how complicated this area of the law is. Why should we have two tests? It just seems very complicated. I agree. We ourselves have noodled about this, you might say. And you have two tests because of what I said earlier. If you do the segmentation analysis and it's done, for instance, in the independent utility context that the district court did for the intersections project, you never look at whether there's a continuous course of action covered by the cumulative actions analysis. It reads 1502.4A and 1508.25A2 out of the CEQ regs. And that is impermissible. There is no sub – they don't trump it. They exist side by side. Do you have time to talk about the other factors? The other factors other than likelihood of success? Yes. Yes, Your Honor. Because you have to establish them. I understand. I will hurry through those. I don't know if I have time, but I will hurry through those. The other factor is there is no real harm to the agencies from what we're – the injunction we're asking for. Again, in the – it's in our record excerpts at page 87. It's from the intersections administrative record. The agencies specifically tell the public construction could begin on SH-45 southwest at around the same time as intersections they're talking about. Then they say, however, the desire is to open the MOPAC main lanes extending under Slaughter Lane and under La Crosse Avenue before SH-45 southwest is open to traffic. So they have things backwards, and they're rushing this because, well, I believe policy reasons, but I understand Your Honors can't get into that. But the reason they're giving for rushing it is the reason we think there's harm. That is, they know or claim that they have to do it while the birds are gone, because otherwise they will disturb the birds, which are endangered. But the problem with that is habitat is critical piece, as Babbitt v. Sweet Home held in the Supreme Court. It is a take to destroy habitat, where they upheld the Interior Department's regulations. It is a take to destroy habitat. So what they're saying is, let us destroy habitat, which is Endangered Species Act violation. Let us destroy habitat so we can hurry and get this done. They aren't even proposing to build it first. They're proposing intersections, which they say should go first, doesn't even go under their status report. That status report wouldn't even start up until May 1st of 2017. There is plenty of time for us to either have a final preliminary injunction appeal taken care of here, or, more likely, I think, as the way things are going, is to finish up the trial and have a final decision before May 1st in the district court. All we're asking is, for the time being, don't destroy the habitat, because we have a reasonable basis for saying they should have done an analysis under 1508.2582, and they didn't even do it, and it was legal error to say they don't have to because of the segmentation regulations. My time is up. Do you support an expedited appeal on the merits? Yes, but... Obviously, we didn't have it this week. Yes. But do you support an expedited appeal on the merits that's been urged by the opposing party? If I can give a slightly qualified answer, yes, but... And the reason I say the but part is, it's not a wise exercise of judicial economy, it seems to me, to rush that through on the preliminary injunction because I believe what's likely to happen is we're at the tail end of trying to tie up what the administrative records are. We have some loose ends. We'll probably have to go back to the district court to tie those down. But once we do that, we have briefing and argument on the administrative record and a final decision from the district court judge, and that can happen, assuming the agency responds to his order that compels them to produce some documents. That can happen fairly quickly. So by the time we have a preliminary injunction appeal briefed and argued here, expedited, we also could finish the trial and you could have the full record, a final decision from the district judge, and make that decision. And there is no harm to the agency in the meantime. They speak of a contract, but if you read it carefully, they don't even mention that they signed the contract. They say, as of October 26th, they say they haven't yet in their filing with this court. So they don't even have a contract yet, and they haven't even shown the public the contract. Nobody knows what it says, so nobody knows whether they're right, that there's going to be harm to them if the contract is interfered with. So I see no harm to them. The only harm is they might have to confront the full environmental consequences of what they're doing before they destroy that habitat. That's the only consequence to them, and NEPA is an accountability statute. That's all it is. The only rights we have are procedural rights. We have no substantive rights. It's only procedural. And the courts, it seems to me, for this most important environmental statute, should say you have to follow the procedures. You're supposed to take a hard look in advance. We got a wink and a nod here. That's all we got. And we want a hard look, and we can't even ask for anything more than that. That's all we can ask for. And that's what the statute requires, I believe. Thank you. May it please the Court. I'm Jane Weber, and I'm arguing on behalf of the Central Texas Regional Mobility Authority and the Texas Department of Transportation. And like Mr. Hicks, we appreciate very much the court taking this issue up on such an expedited basis so that we can have this important question of an injunction pending appeal resolved quickly, timely, in order to allow the long-planned construction activities to commence on November 8th, as has been scheduled for months and months. And we urge the court to deny the preliminary injunction because Judge Yackel got it exactly right. He used exactly the right yardstick to analyze the plaintiff's segmentation claim. And Judge Costa, you asked questions earlier that indicate you see the distinction. Yes, NEPA is complicated, and the interplay of the various concepts can be very complex. And you correctly articulated that Judge Yackel addressed three issues. First, segmentation. Second, cumulative impact. And third, is Highway 45 a state project or a major federal action not subject to NEPA as a threshold matter? But I think it's very important, and you recognize that where the horse is buried in this injunction pending appeal dispute is the segmentation analysis. And did Judge Yackel use the correct yardstick? But I think it's very important to take a step back a little bit and make sure that in analyzing the concepts, we don't conflate cumulative impacts with cumulative actions. Judge Yackel analyzed cumulative impacts, and you're right, Judge Costa, that was an analysis of the potential cumulative impacts of the intersections project. And that is an analysis within the intersections environmental analysis under NEPA, and the CEQ regs apply to that because there is no corollary for highway projects. Those cumulative impacts analysis apply to any sort of project. And the cumulative impacts analysis within an environmental assessment is not a full stem to stern scope of the EA. It's rather a focus on what may be the impacts. The O'Reilly case is a good illustration. In that case, the cumulative impacts analysis encompassed 72 different projects, past, present, future, whereas the segmentation analysis looked at three. So 45, the Wildflower Center, the Oak Hill Parkway, all kinds of things, past, present, and future, may properly be part of cumulative impacts, but that has nothing to do with segmentation. Well, I agree that's not what they're pressing in their motion here, but since we're here, where in the technical memorandum or anywhere else were the cumulative impacts of all three of these projects addressed? Well, those are analyzed within the intersections environmental assessment, and those are addressed not in the briefing for this court, but in the briefing in the district court at the preliminary injunction stage. Actually, the substantive scope of the cumulative impacts portion of the intersections is not included in our briefing because that is not a challenge that the plaintiffs raised in their application for a preliminary injunction or in their memorandum. That is an issue that came up for the first time in their reply brief, and it was extensively discussed at argument, but we did not supply any briefing on that because it had not been raised. And most important, Your Honor, here today, it is not part of the injunction pending appeal. Only the segmentation analysis, the question of did Judge Yackel use the correct yardstick in analyzing whether the intersections and 45 were properly analyzed under two separate environmental assessments, and the answer is yes. He used the correct one because he used this court's four-factor test articulated in the Save Barton Creek case. What's the answer on the merits to Judge Acosta's question? I understand that you say it wasn't briefed timely to the district court and it's not before us today, but is the answer that this wasn't actually addressed, or was it addressed? It was not addressed in the briefing, but it is addressed in the intersections administrative record. The administrative record includes a cumulative impact technical memorandum that is attached, and I apologize to the court that I do not have the citation to that in the administrative record, but a citation to it is included in our brief to the court, our preliminary injunction brief to the court. I have it right here. 11-645. I don't see where it talks about all three projects. Do you concede that as part of that, because the cumulative impacts have to consider reasonably foreseeable projects, that that does encompass all three of these planned projects for cumulative impacts purposes? For cumulative impacts purposes, I'm going to answer on two layers, Your Honor. First, the scope of cumulative impacts analysis has to encompass past, present, future, and there may be a whole bunch of different things that need to be included in it, but most important for this court's purposes today, a deficiency in the cumulative impacts analysis of the intersections cannot be a basis for enjoining 45, and here's why. Cumulative impacts analysis only looks, it analyzes other projects, but only within the scope of can intersections go forward or not. Whether you improperly failed to analyze some past, present, or future project as a component part within the intersections EA is not a basis to enjoin that other project, and we know that from the text of the regulation and from the case law construing it. The text of the regulation of the cumulative impacts requirement refers to past, present, and future. So things that you might be required to consider, a past project, it's error not to include it in there if it was going to be part of a cumulative impact, but you can't enjoin it. It's not part of the plan. Where is the analysis of a cumulative impact of 45? The analysis of cumulative impacts of 45, the cumulative impacts of intersections is contained in the cumulative impacts memorandum, the technical memorandum within the intersections administrative record. Whether 45 is in there or not is not a basis, potential basis, to enjoin construction of 45 going forward. Let me ask you, does a cumulative impacts analysis have to be prepared with respect to 45? Do you mean should 45 have been included in the cumulative impacts analysis of intersections, or do you mean that 45 should have had its own cumulative impacts analysis? Should have it had its own cumulative impacts analysis. No, it did have one, but it doesn't have to, and here's why, Your Honor. It is a state project. State Highway 45 is a wholly state project. It's 100% state funded. It is not subject to the responsibility or control of any federal agency. It is not subject to NEPA, period, full stop. The only way that NEPA can be applicable to 45 is through segmentation analysis. The only way NEPA can reach out and grab it is if under a segmentation analysis, a court determines that it was improperly locked off from intersections. If there is a defect in the cumulative impact analysis in the intersections plan, that would only be a basis for enjoining the intersections, not the other. That's your point. Exactly, and O'Reilly tells us that. Because in O'Reilly, the court analyzed the cumulative impacts and segmentation of the projects at issue. They said you're A-OK on segmentation, but your cumulative impacts analysis is a little thin, so we're going to remand this project only to the agency to do a more robust cumulative impacts analysis. But it does not provide a basis for enjoining 45. And that's the only issue that's presented to the court here on injunction, because as Mr. Hicks said, intersections isn't going to commence until May. So the only issue right now is whether it is appropriate to enjoin construction on 45, and the cumulative impacts analysis in the intersections project cannot provide a basis for that. And Judge Jekyll, the fact that he analyzed the two separately, he analyzed segmentation under the, say, Barton Creek four-factor test that's derived from the highway-specific governing regulations, and he analyzed separately cumulative impacts, shows that he didn't just reflectively sort of knee-jerk reject application of the CEQ regs. Because the cumulative impacts, his analysis in the order denying preliminary injunction, the cumulative impacts analysis rests on the CEQ regs because there is no highway-specific corollary. The governing regulations of the FHWA don't address cumulative impacts, so therefore we look to that. And the Riverkeeper case really very clearly expresses the distinction that when making a segmentation analysis, it's appropriate to look at the governing regulations is the phrase the court uses. Now, the project at issue in the Riverkeeper case was a pipeline, not a highway, and so the CEQ regulations were the appropriate regulations. So when analyzing the segmentation challenge to the pipeline project in the Riverkeeper case, the court appropriately looked at the CEQ regs. But in that discussion, discussing the sensible coalition Dole case, said that that's a highway case. So they were right to look at the FHWA regs and not the CEQ regs, but we're going to look at the CEQ regs because those are the governing regulations for our project. And it's significant, Your Honors, that more than 60 different federal agencies have adopted regulations implementing the CEQ regs for NEPA compliance. Under a plaintiff's construct, those are not the appropriate framework for any of those agencies to analyze their projects. Well, they're saying you have to do both. And what about the regulation does say the FHWA supplement the CEQ regulations. They say together these regulations set forth all FHWA requirements under NEPA. So why wouldn't reading that regulation support their view that you do look at both sets of regulations? Well, I think a couple of things, Your Honor. One is the regulations are not tabula rasa. The federal courts, including this court, have been construing those regulations as they apply in NEPA cases for decades. And the uniform, Mr. Hicks was unable to cite to this court a single case where the CEQ regulations, there was a violation found of the CEQ regulations where there was not improper segmentation found under the FHWA. He was not even able to identify for the court a single highway case where the court analyzed the CEQ regulations only and not the FHWA. And not a single federal court has ever found compliance with the FHWA regs that this court used to formulate the four-factor Save Barton Creek test and then gone on to do the two tests. And you're right, Your Honor, these are complicated. Why have two tests? But there's no case to the contrary either that says you're forbidden from looking at the one if you already are looking at the other. And so there's the textual, you agree that the text is a little bit against you. No, Your Honor, I don't agree with that. Because the FHWA regulations in the whole supplement the CEQ regulations. But where you have what the federal courts have done, what this court did in Save Barton Creek, and what many, many other circuits have done is look to the dotted line from the CEQ regulation regarding segmentation to the FHWA one and said this is the implementation of that. What do we do with the Tenth Circuit case? The Utah case. The Utah case looked at both. It looked at both. It looked at both and it didn't find error in, it did not trump the FHWA. But it did look at both. It did look at both. It's one case where they are absolutely looking at both. Yes, Your Honor, that is one case absolutely looking at both. This circuit has emphatically not looked at both. But we haven't forbidden it. You haven't forbidden it, but what you would have to do in order to rule for plaintiffs here, this court would necessarily have to say, hey, TxDOT and any other state agency operating in the shoes of the FHWA pursuant to contract, hey, FHWA, I know y'all have all been analyzing and doing lengthy and expensive environmental reviews of highway projects all around the country and analyzing the necessary scope of your environmental assessments pursuant to these factors in the FHWA regulations as implemented consistently by the federal courts for decades. I know y'all have been doing that, but too bad, that's not good enough, and we're going to upend that. And that is inappropriate for a court to change the yardstick that an agency has been operating under. Rightly so. This court has never forbidden it, but this court has consistently, this court and every other court, that has addressed the interplay. There are numerous courts, many, many courts just applying the four-factor test without addressing the interplay, but every court that has addressed the interplay and said, here's CEQ, here's FHWA, which do you do, has done like the Delaware Riverkeeper and said, no, you look at the governing regulations. Every time someone has thought about it, they say, we take the dotted line and we do the governing regulations. So from a policy standpoint, there's a case cited in the Say Barton Crease case called Mack v. Skinner, and it is a case out of the District of Columbia District Court. It was affirmed by the D.C. Circuit, and it's a highway case, and the court had this to say in the Mack v. Skinner case. It said that once a legal principle is established, it is permissible for an actor to plan in accordance with the rule, and it is desirable for him to be able to rely on the rule in planning his conduct. And that is what we have here. The Texas Department of Transportation had, for the purposes of the intersections project, stepped into the shoes of the FHWA, and in analyzing the appropriate scope of the intersections environmental assessment for NEPA compliance, it analyzed in terms of the FHWA regulations as articulated in the four-factor test from Say Barton Crease, and it determined that under that four-factor test, having an environmental assessment of the intersections project alone is the appropriate course, and nothing in the federal jurisprudence has ever told them that that is not appropriate. This court would have to upend that. Who knows how many projects there are around the country? Counsel, could you address the state-of-the-record evidence on whether there are golden-cheeked warblers in the SH-45 project right away? Your Honor, in our response on the preliminary injunction, which appears at tab 7 of the record excerpts filed by the plaintiffs, at pages 34 to 36, there is discussion and extensive citations to the administrative record regarding the golden-cheeked warbler and whether they were there and when they were spotted. I thought the position was that they're not there, that there's evidence that they're not in the right-of-way. Do you concede today that they're in the right-of-way? I do not concede that they are in the right-of-way, Your Honor. The area in question is potential habitat, and I just want to make a side note. Mr. Hicks argued that cutting down habitat is a violation of the Endangered Species Act. Habitat is a take. There is no claim filed by anybody anywhere under the Endangered Species Act. If the issue in this litigation was that we're going to violate the Endangered Species Act by taking warbler habitat, then there is available and appropriate federal mechanism, the Endangered Species Act, and they have never made any claim under that. But you asked about the other points, the other factors, and we encourage the Court to deny the preliminary injunction not only because Judge Yackel got it exactly right in applying the Save Barton Creek four-factor test and the FHWA regs, but the other factors do not weigh in favor of an injunction. The administrative record of State Highway 45 is filled, and starting at page 34 of our response in the District Court, tab 7, there's extensive discussion of the full studies, environmental studies, by reputable scientists of the golden-cheeked warbler, of the karst invertebrates, of the salamanders, extensive analysis of caves. There are best practices built into the construction contracts. So you put that against conclusory affidavits, oh, they're going to take the habitat. The balancing of equities does not command an injunction here. The just-in-word declaration that was attached to our motion to expedite explains the timing considerations, that if we don't start on November 8th, there's a year delay with some cost to the agencies because of demobilizing, but perhaps most important, there is, and I want to finish on this because I think that this is an issue that is wholly overlooked in the plaintiff's claims and attempts to delay this, and that is the public interest in having this important infrastructure go forward. There was substantial evidence in the record of strong public support, of the tremendous need for these projects, of strong safety issues. There are lots and lots of collisions. There's substantial delay. The people in southern Travis County and northern Hays County need this infrastructure there. And a case that's cited in Judge Yackel's opinion, the Aquifer Guardians in Urban Areas case, a case that came out of the Western District in San Antonio, the court had this to say about the public interest in going forward on infrastructure projects as against a NEPA claim. Plaintiff's interest in additional NEPA process is outweighed by the countervailing costs of delaying the project and prolonging the severe congestion at the interchange, which poses a threat to public safety, reduces the quality of life for the thousands of people who use the interchange every day, and creates thousands of hours of traffic delays each month. These same factors demonstrate an injunction would not serve the public interest. That comes from another case. Counsel, do you still seek an expedited appeal on the merits of the injunction? I don't believe, at this point I think that is moot to some extent because the court has come here today. If this court denies the preliminary, the injunction pending appeal as part of this proceeding, then our need for expediting in order to have the whole appeal resolved to let us go forward on Tuesday is moot. So if the court denies an injunction and lets us go forward on Tuesday, then expediting or not expediting the interlocutory appeal... What if we grant it, just assuming arguendo? You're not taking a position the other way if we rule a different way. If you grant the injunction pending appeal, then there's no need to expedite because this project's not going to go forward for a year, and you can take a whole year on the interlocutory appeal. So there's no need from either side to do an expedited interlocutory appeal at this point. That's correct, Your Honor. Today takes care of, and we urge the court, and we appreciate your indulgence on the timing and respectfully pray that the court let us know yea or nay as soon as possible so that the administrative steps necessary to let the construction commence on Tuesday can proceed accordingly. There is no NEPA exception or CEQ exception, regulation exception, for highway projects to treat them differently than you treat other projects. All federal agencies are bound by all of the CEQ regulations. And the case that I think best illustrates our point, there is no case directly on point. And I agree with Judge Costa that the analysis in the NEPA cases historically is, frankly, a little muddled. But the best case is the, say, Barton Creek Association case. Ours is not, for purposes of today, is not a segmentation case. It's a cumulative actions requiring cumulative impacts analysis of all three pieces case. And so to keep going saying they're the same thing is wrong. Say Barton Creek Association did not cite 1508.25a or 1502.45a. It didn't cite it, but it effectively said it's different because there was no reason for the court in, say, segmentation analysis is okay, independent utility is met here, okay, in that situation back then, in some of the same area out here, by the way. It would have no reason to say, unlike here, those other cases did not involve simultaneous or continuous construction. Well, this one does. This is the case that, say, Barton Creek Association essentially set aside and said, that would be different. And there was no reason for that analysis except for that point. It didn't cite 1508.25a. I agree. But if you look, the language about continuous construction mirrors exactly, nearly exactly, 1502.4a's concluding statement about one, in effect, one continuous course of action. That's the reason they said it. And this case is the one they were pointing to to make it different. You're saying the CEQ, it applies to highways, there's no highway exception to CEQ regulations, but it's a pretty common principle that the specific governs over the general. And I read some of these cases, in particular that Riverkeeper case, as saying, sure, there's these general CEQ regulations, but then a lot of agencies have gone out there and provided specific guidance for their particular area of expertise. So why isn't that a fair way of reading the case law? Well, I don't think that's what Riverkeeper says. And I don't think it's a fair way to read it because I don't think Riverkeeper says it, and I don't think anything in the CEQ reg says you let the specific govern the general. Otherwise, you face a situation like in the Grand Canyon Trust case out of the D.C. Circuit in 2002 where they said we owe no deference to agencies' interpretation of the CEQ regs. So they don't get to say we're rulemaking our way out from under the CEQ regs. They can't do that. That's the Grand Canyon Trust case, I think, says that. And the reason I hate to disagree. There's no deference because it's not directed to a particular agency. Right. CEQ, and they didn't develop it, and certainly TxDOT didn't, because this is a Johnny-come-lately delegation situation. But the reason I disagree with Your Honor on the reading of Riverkeeper is it says, it basically says the agency there argued the four segmentation factors. And then the court says an agency's consideration of the proper scope of its NEPA analysis should be governed by the governing regulations. And the next regulation, it cites 111.F, and then it said, but even if the analysis were closely related, the point remains, the agency's determination of the proper scope of its environmental review must train on the governing regulations, which here means 40 CFR section 1508.25a. That is pointing directly to the argument we make here. FERC has no counterpoint to the FHWA regulations. No, but the FHWA regulations are just a statement of the common law, if you want to call it that, of segmentation analysis. It's the same, it mirrors it exactly. What's the statutory book for the segmentation analysis? I'm not sure where it came from, Your Honor. It was a way, first of all, we have to recall, the general rule, SBCA says this, the general rule is you look at highway projects of a piece. You don't segment. That's what SBCA says. People overlook that. We folks talk so much about segmentation. They just develop, I think it is, you know, we have to decide how to divide projects and how big the scope is of what we look at, so we're going to begin to analyze it. And what they were trying to do was to keep agencies from, pardon the word, weaseling their way out of doing the advanced hard look that they're required to do underneath them. And so they developed these, the courts began to develop this to address whether they were, and now it's been turned into a cudgel to avoid having to do it at all. Let me just mention this issue about the burbs. I'm sorry. Counsel, is it true that the first, the second, the fourth, the seventh are just, all the circuits that have done this have not applied the regulations, the other regulations. They have all used the same analysis here, the 771-111-F. I mean, every single circuit's cases do not do what you are asking us to do, except arguably the Tenth Circuit does say it comes out the opposite way. I guess, I think, what's the purpose of the distinction drawn in, say, the Barking Creek Association if it wasn't to point to this? The situation has not been developed this way. I can't speak to litigating strategies for other people. And so they didn't reject this argument. And I don't understand because it's a plain argument. It says these rules supplement, they don't supplant. Let me just briefly mention the burbs argument and the harm. If I understood right, they're saying there are no golden-cheeked warblers here in this area, even during the time they would normally be nesting. Then they turn around and say, but you have to let us go forward because we have to do this while the birds are gone. You can't put those two pieces together and make them make sense, right? You just can't do that. The only reason they're asking this court to allow them to hurry is because of their understanding that there are endangered species nesting in the trees that they're going to tear down, in the 58-acre area out there that they're going to tear down. If there are no birds there, then there's no harm in waiting. There's no harm in the injunction at all because it doesn't matter to them whether the birds are there or not. Well, it matters to the public that they had a harm that it would be to the public. There's no delay. I go back to the point, there is no delay in these construction projects going forward and what we're asking for because they say in the administrative record, hey, we understand that intersections need to be built first. If your honors aren't familiar with the traffic patterns here, if you build and put in place SH-45 Southwest before you fix the intersections project, you have the most horrendous traffic problem for three or four years that you can imagine because you're dumping them into a situation where there are traffic lights. You're putting more and more, tens of thousands more cars in an already over-packed highway. It makes no sense at all to do SH-45 Southwest first. They basically say that in their administrative record for the intersection project when they're answering the thing I quoted earlier from the administrative record. On the bird point, I thought they were saying that they don't think there's birds in the trees that are going to cut down, but the construction might affect surrounding habitat and that's why they want to do the construction when the birds are migrating south. I haven't read it that way, but I don't think that makes a difference because they're still destroying the habitat. I conclude, I hate to conclude because there's so much to talk about here, but I conclude by saying this is to get at the core issue of NEPA, which says look at cumulative impacts of cumulative actions. 1508.2582 could not be clearer about that, and it's not segmentation. It is, like, say, Barton Creek Association said. This is a continuous course of action for three projects that they started at the same time and they want to finish about the same time because they're of a piece. They're not separate, and they are not supposed to be able to play a shell game to avoid this. When you have TxDOT serving as both a state agency and a federal agency and allow them to get out from under plain NEPA requirements and the basic environmental accountability principle, which is all we have, we have nothing else in this case. We can't stop them from building this ultimately. They can say this is a terrible idea environmentally if they do the study. They can say it's a terrible idea. They get to go ahead. NEPA doesn't stop them. We're just saying make them look and make them stand up to the people and say, here are the environmental consequences of what we're going to do. We plan to do this, and at least they're accountable, and that since 1970 has been the rule of the land in the leading environmental statute in this country, and that we think it should be enforced here. There is no harm, no harm to the state from doing what we ask you to do, and we can get a final case up here from the district court, I believe fairly quickly with cooperation from the other side. I know that the district judge is quite helpful in moving the case forward. So I feel we can get the full case up here. I don't see any harm from this, and I think we're right on the law. There was a legal error in the district court's analysis. The FHWA regs do not trump 1508.25a. Thank you. Thank you, counsel. That concludes the arguments. This case is under submission. We will undertake to have a ruling promptly for both sides.